UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>    Plaintiff,<br><br>v.<br><br>WPX ENERGY, INC., JOHN A. CARRIG, CLAY M. GASPAR, ROBERT K. HERDMAN, KELT KINDICK, KARL F. KURZ, KIMBERLY S. LUBEL, RICHARD E. MUNCRIEF, D. MARTIN PHILLIPS, DOUGLAS E. SWANSON, JR., and VALERIE M. WILLIAMS,<br><br>    Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against WPX Energy, Inc. ("WPX" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which WPX will be acquired by Devon Energy Corporation ("Devon"), through Devon's wholly owned subsidiary East Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On September 28, 2020, WPX and Devon issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated September 26, 2020 (the "Merger Agreement") to sell WPX to Devon. Under the terms of the Merger Agreement, each WPX stockholder will receive 0.5165 shares of Devon common stock for each share of WPX common stock they own (the "Merger Consideration"). Upon completion of the merger, Devon stockholders will own approximately 57 percent of the combined company and WPX stockholders will own approximately 43 percent of the combined company on a fully diluted basis. The Proposed Transaction is valued at approximately $2.35 billion.

3. On November 4, 2020, Devon filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement, which recommends that WPX stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Devon's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi"); (iii) Citi's potential conflicts of interest; and (iv) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, WPX's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. WPX's common stock trades on the New York Stock Exchange which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of WPX.

9. Defendant WPX is a Delaware corporation with its principal executive offices located at 3500 One Williams Center, Tulsa, Oklahoma 74172. WPX is an independent energy producer with core positions in the Permian and Williston basins. WPX's common stock trades on the New York Stock Exchange under the ticker symbol "WPX."

10. Defendant John A. Carrig ("Carrig") has been a director of the Company since December 2011.

11. Defendant Clay M. Gaspar ("Gaspar") has been President and Chief Operating Officer ("COO") of the Company since December 2017, and a director of the Company since November 2019.

12. Defendant Robert K. Herdman ("Herdman") has been a director of the Company since December 2011.

13. Defendant Kelt Kindick ("Kindick") has been independent Lead Director since May 2018 and a director of the Company since January 2013.

14. Defendant Karl F. Kurz ("Kurz") has been a director of the Company since January 2014.

15. Defendant Kimberly S. Lubel ("Lubel") has been a director of the Company since December 2011.

16. Defendant Richard E. Muncrief ("Muncrief") has been Chief Executive Officer ("CEO") of the Company since May 2014, Chairman of the Board since January 1, 2017 and a director since 2014. Defendant Muncrief also previously served as President of the Company from May 2014 to December 2017.

17. Defendant D. Martin Phillips ("Phillips") has been a director of the Company since 2020. Defendant Phillips is also a Managing Partner of Encap Investments L.P. ("Encap"), the Company's largest stockholder which owns approximately 27.3% of WPX's outstanding shares.

18. Defendant Douglas E. Swanson, Jr. ("Swanson") has been a director of the Company since 2020. Defendant Swanson is also a Managing Partner of Encap.

19. Defendant Valerie M. Williams ("Williams") has been a director of the Company since March 2018.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Devon is a Delaware corporation with its principal executive offices located at 333 West Sheridan Avenue, Oklahoma City, Oklahoma 73102. It is a leading independent energy company engaged in finding and producing oil and natural gas. Included in the S&P 500, Devon operates in several of the most prolific oil and natural gas plays in the U.S. Devon's common stock trades on the New York Stock Exchange under the ticker symbol "DVN."

22. Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of Devon.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. Incorporated in 2011, WPX is an independent oil and natural gas exploration and production company engaged in the exploitation and development of long-life unconventional properties. The Company is focused on profitably exploiting, developing and growing its oil positions in the Delaware Basin (a subset of the Permian Basin) in Texas and New Mexico and the Williston Basin in North Dakota.

24. WPX has a geographically diverse portfolio of oil and natural gas reserves. Its proved reserves at December 31, 2019 were 528 million barrels of oil equivalent ("MMboe") and reflect a mix of 56 percent crude oil, 23 percent natural gas and 21 percent natural gas liquids ("NGLs"). During 2019, the Company replaced its total commodity production at a rate of 190 percent, before consideration of divestitures.

**The Proposed Transaction**

25. On September 28, 2020, WPX and Devon issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> OKLAHOMA CITY and TULSA, Okla., Sept. 28, 2020 -- Devon Energy ("Devon") (NYSE: DVN) and WPX Energy ("WPX") (NYSE: WPX) today announced they have entered into an agreement to combine in an all-stock merger of equals transaction. The strategic combination will create a leading unconventional oil producer in the U.S., with an asset base underpinned by a premium acreage position in the economic core of the Delaware Basin. The combined company, which will be named Devon Energy, will benefit from enhanced scale, improved margins, higher free cash flow and the financial strength to accelerate the return of cash to shareholders through an industry-first "fixed plus variable" dividend strategy.
>
> **TRANSACTION DETAILS**
>
> Under the terms of the agreement, WPX shareholders will receive a fixed exchange ratio of 0.5165 shares of Devon common stock for each share of WPX common stock owned. The exchange ratio, together with closing prices for Devon and WPX on Sept. 25, 2020, results in an enterprise value for the combined entity of approximately $12 billion. Upon completion of the transaction, Devon shareholders will own approximately 57 percent of the combined company and WPX shareholders will own approximately 43 percent of the combined company on a fully diluted basis.
>
> The transaction, which is expected to close in the first quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by EnCap Investments L.P. own approximately 27 percent of the outstanding shares of WPX and have entered into a support agreement to vote in favor of the transaction. The closing of the transaction is subject to customary closing conditions, including approvals by Devon and WPX shareholders.
>
> **CEO COMMENTARY**
>
> "This merger is a transformational event for Devon and WPX as we unite our complementary assets, operating capabilities and proven management teams to maximize our business in today's environment, while positioning our combined company to create value for years to come," said Dave Hager, Devon's president and CEO. "Bringing together our asset bases will drive immediate synergies and enable the combined company to accelerate free cash flow growth and return of capital to shareholders. In addition to highly complementary assets, Devon and WPX have similar values, and a disciplined returns-oriented focus, reinforcing our belief that this is an ideal business combination."

"This merger-of-equals strengthens our confidence that we will achieve all of our five-year targets outlined in late 2019," said Rick Muncrief, WPX's chairman and CEO. "The combined company will be one of the largest unconventional energy producers in the U.S. and with our enhanced scale and strong financial position, we can now accomplish these objectives for shareholders more quickly and efficiently. We will create value for shareholders of both companies through the disciplined management of our combined assets and an unwavering focus on profitable, per-share growth."

**STRATEGIC RATIONALE**

- **Accelerates cash-return business model** – The merger accelerates Devon's transition to a business model that prioritizes free cash flow generation over production growth. With this highly disciplined strategy, management is committed to limiting reinvestment rates to approximately 70 to 80 percent of operating cash flow and restricting production growth to 5 percent or less annually. Free cash flow will be deployed toward higher dividends, debt reduction and opportunistic share repurchases.

- **Immediately accretive to financial metrics** – The transaction is expected to be immediately accretive to all relevant per-share metrics in the first year, including: earnings, cash flow, free cash flow, and net asset value, as well as accretive to return on invested capital. The combination is also expected to enhance the company's credit profile and decrease its overall cost of capital.

- **Maintains strong balance sheet and liquidity** – The all-stock transaction ensures the combined company will retain a strong balance sheet with a pro forma net debt-to-EBITDAX ratio of 1.6x on a trailing 12-month basis and is targeting a leverage ratio of approximately 1.0x over the longer term. The combined company will also have excellent liquidity with approximately $1.7 billion of cash on hand and $3 billion of undrawn capacity on its credit facility expected at closing.

- **Accretive Increases scale and diversification** – The transaction creates one of the largest unconventional oil producers in the U.S. with production of 277,000 barrels per day. The combined company will benefit from a premier multi-basin portfolio, headlined by the world-class acreage position in the Delaware Basin that is 400,000 net acres and accounts for nearly 60 percent of the combined company's total oil production. The Delaware Basin acreage is geographically diversified between southeast New Mexico and Texas, with only 35 percent of the leasehold on federal land. The consolidated Delaware footprint provides a multi-decade inventory of high-return opportunities at combined activity levels of 17 drilling rigs. The balance of the portfolio will be diversified across high-margin, high-return

resource plays in the Anadarko Basin, Williston Basin, Eagle Ford Shale and Powder River Basin.

- **Drives significant cost synergies** – Cost savings from initiatives underway in the second half of 2020 and synergies resulting from the merger are expected to drive $575 million in annual cash flow improvements by year-end 2021.  These cost improvements are expected to be attained through operational efficiencies, general and administrative savings and reduced financing expense.  The net present value of these cost synergies over the next 5 years equates to more than $2 billion of value.  The all-stock transaction structure allows shareholders of both Devon and WPX to benefit from the cost synergies and significant upside potential of the combined company.

- **Supports implementation of a "fixed plus variable" dividend strategy** – With the business scaled to consistently generate free cash flow, Devon is initiating a new dividend strategy that pays a fixed dividend and evaluates a variable distribution on a quarterly basis.  The fixed dividend is paid quarterly at a rate of $0.11 per share and the target payout is approximately 10 percent of operating cash flow.  In addition to the fixed quarterly dividend, up to 50 percent of the remaining free cash flow on a quarterly basis will be distributed to shareholders through a variable distribution.  This enhanced dividend strategy is effective immediately upon close of the transaction.

- **Shared commitment to ESG excellence** – Both Devon and WPX share an uncompromising commitment to ESG leadership, employee safety and environmental responsibility.  Consistent with this commitment, the combined company will pursue measurable ESG targets, including methane intensity reduction, and will have progressive actions and practices in place to advance inclusion and diversity.  Further, ESG metrics will be incorporated into the compensation structure and the board will monitor ESG goals and results.

- **Combines complementary cultures** – Devon and WPX share similar values and this combination is designed to optimize the strengths of both companies' operating philosophies to drive the continued growth and success of the business.

**LEADERSHIP AND HEADQUARTERS**

Following the merger, the board of directors will consist of 12 members, 7 directors from Devon and 5 from WPX including the lead independent director.  Dave Hager will be appointed executive chairman of the board, and Rick Muncrief will be named president and CEO.  The combined company's executive team will include Jeff Ritenour as executive vice president and chief financial officer, Clay Gaspar as executive vice president and chief operating officer, David Harris as executive

vice president and chief corporate development officer, Dennis Cameron as executive vice president and general counsel, and Tana Cashion as senior vice president of human resources. The combined company will be headquartered in Oklahoma City.

**PRELIMINARY PRO FORMA 2021 OUTLOOK**

Detailed forward-looking guidance for the full-year 2021 will be provided upon closing of the transaction. Based on current supply and demand dynamics, product inventory levels, and other leading economic indicators, the company expects to design capital activity plans to maintain base production.

The maintenance capital requirements to keep oil production flat in 2021 versus 2020 fourth-quarter exit rates of greater than 280,000 barrels per day is estimated at approximately $1.7 billion. Pro forma for cost synergies, these maintenance capital requirements in 2021 are estimated to be funded at $33 WTI and $2.75 Henry Hub pricing.

**Insiders' Interests in the Proposed Transaction**

26. WPX insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of WPX.

27. Notably, several Company insiders will secure positions for themselves with the combined company. For example: five members of the Board will serve on the combined company's board of directors.

28. The Merger Agreement further provides that: (i) defendant Muncrief will assume the role of President and CEO of the combined company with an annual base salary of $1,100,000 and an annual long-term incentive target of $8,750,000, (ii) defendant Gaspar will assume the role of Executive Vice President and COO of the combined company with an annual base salary of $620,000 and an annual long-term incentive target of $3,800,000, and (iii) the Company's current Executive Vice President and General Counsel, Dennis C. Cameron, will serve in the same roles

with the surviving company and will receive annual base salary of $420,000 and an annual long-term incentive target of $1,500,000.

29. Moreover, if they are terminated in connection with the Proposed Transaction, WPX insiders stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Richard Muncrief | $8,587,441 | $9,949,348 | $ 25,000 | $18,561,789 |
| J. Kevin Vann | $3,791,988 | $3,093,913 | $ 25,000 | $ 6,910,901 |
| Dennis Cameron | $2,724,185 | $1,668,796 | $ 25,000 | $ 4,417,981 |
| Clay Gaspar | $4,439,045 | $4,369,717 | $ 25,000 | $ 8,833,762 |
| Bryan Guderian | $3,131,394 | $2,219,281 | $ 25,000 | $ 5,375,675 |

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

30. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to WPX's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction.

31. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (i) the Company's and Devon's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Citi; (iii) Citi's potential conflicts of interest; and (iv) the background of the Proposed Transaction. Accordingly, WPX stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning WPX's and Devon's Financial Projections*

32. The Registration Statement omits material information regarding WPX's and

Devon's financial projections.

33.     For example, the Registration Statement fails to disclose for each of the "WPX Forecasted Financial Information" and "Devon Forecasted Financial Information": (i) unlevered free cash flow ("UFCF"); (ii) EBITDA; (iii) the line items underlying the Company's and Devon's UFCF and EBITDA over the projection period; and (iv) net operating losses.

34.     The omission of this material information renders the statements in the "Certain Unaudited Forecasted Financial Information" and "Opinion of WPX's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Financial Analyses***

35.     The Registration Statement omits material information regarding Citi's financial analyses.

36.     The Registration Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, WPX's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37.     With respect to Citi's *Selected Public Companies Analyses*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analyses.

38.     With respect to Citi's *Discounted Cash Flow Analysis* of WPX, the Registration Statement fails to disclose: (i) the standalone UFCF that WPX was forecasted to generate during

the fiscal years ending December 31, 2021 through December 31, 2025 utilized in the analysis; (ii) WPX's net operating loss carryforwards expected by WPX's management over the forecast period; (iii) quantification of the terminal values; (iv) the estimated cash taxes used in the analysis; (v) quantification of the inputs and assumptions underlying the discount rates ranging from 7.7% to 8.5%; and (vi) Citi's rationale for applying to WPX's fiscal year 2025 estimated adjusted EBITDA a selected range of adjusted EBITDA multiples of 3.9x to 5.3x.

39.     With respect to Citi's *Discounted Cash Flow Analysis* of Devon, the Registration Statement fails to disclose: (i) the standalone UFCF that Devon was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2025 utilized in the analysis; (ii) Devon's net operating loss carryforwards over the forecast period; (iii) quantification of the terminal values; (iv) the estimated cash taxes used in the analysis; (v) quantification of the inputs and assumptions underlying the discount rates ranging from 7.8% to 8.8%; and (vi) Citi's rationale for applying to Devon's fiscal year 2025 estimated adjusted EBITDA a selected range of adjusted EBITDA multiples of 3.9x to 5.3x.

40.     With respect to Citi's *Net Asset Value* analysis of WPX, the Registration Statement fails to disclose: (i) the UFCF that WPX was forecasted to generate from WPX's proved developed producing reserves and currently undeveloped resources utilized in the analysis; (ii) the projected midstream distributions of Catalyst Midstream Partners LLC to WPX during the fiscal years ending December 31, 2021 through December 31, 2025; (iii) Citi's rationale for utilizing a terminal adjusted EBITDA multiple of 4.1x to derive the terminal value in the analysis; (iv) WPX's estimated non-drilling and completion capital expenditures, corporate expenses, net hedge, and other gains and losses; (v) WPX's estimated net debt; (vi) the net operating loss carryforwards expected by WPX's management over the forecast period; and (vii) quantification of the inputs

and assumptions underlying the range of discount rates of 7.7% to 8.5%.

41. With respect to Citi's *Net Asset Value* analysis of Devon, the Registration Statement fails to disclose: (i) the UFCF that Devon was forecasted to generate from Devon's proved developed producing reserves and currently undeveloped resources utilized in the analysis; (ii) Devon's estimated non-drilling and completion capital expenditures, corporate expenses, net hedge, and other gains and losses; (iii) Devon's estimated net debt; (iv) the net operating loss carryforwards expected by WPX's management for Devon over the forecast period; and (v) quantification of the inputs and assumptions underlying the range of discount rates of 7.8% to 8.8%.

42. With respect to Citi's *Illustrative Has/Gets Analysis*, the Registration Statement fails to disclose and quantify the synergies utilized in the analysis.

43. With respect to Citi's analyses of price targets, the Registration Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

44. With respect to Citi's pro forma analysis, the Registration Statement fails to disclose: (i) WPX's and Devon's fiscal years 2021 and 2022 estimated cash flow per share ("CFPS") and estimated free cash flow per share ("FCFPS"); (ii) the potential synergies utilized in the analysis; (iii) the specific accretion to WPX's fiscal years 2021 and 2022 estimated CFPS and estimated FCFPS, WPX's fiscal years 2021 and 2022 estimated FCFPS, and dilution to WPX's fiscal years 2021 and 2022 estimated CFPS, resulting from the analyses; and (iv) the specific accretion to Devon's fiscal years 2021 and 2022 estimated CFPS and estimated FCFPS resulting from the analyses.

45. Without such undisclosed information, WPX stockholders cannot evaluate for themselves whether the financial analyses performed by Citi were based on reliable inputs and

assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Citi's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

46. The omission of this material information renders the statements in the "Opinion of WPX's Financial Advisor" and "Certain Unaudited Forecasted Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's Potential Conflicts of Interest*

47. The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Citi.

48. The Registration Statement sets forth, "WPX has agreed to pay Citi for its services in connection with the proposed merger an aggregate fee of up to $33 million, of which $4 million was payable upon delivery of Citi's opinion and the balance is payable contingent upon consummation of the merger." Registration Statement at 86. The Registration Statement fails, however, to disclose the parameters and criteria Citi needs to satisfy to receive the full $33 million and the amount the Company presently anticipates paying Citi.

49. Additionally, the Registration Statement fails to disclose any services Citi has performed for EnCap and the fees received for such services.

50. Moreover, the Registration Statement fails to disclose whether, pursuant to its engagement, Citi's compensation structure was the same if the Company had entered into a transaction with Company C as opposed to the Proposed Transaction.

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52. The omission of this material information renders the statements in the "Opinion of WPX's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

53. The Registration Statement fails to provide material information regarding the background of the Proposed Transaction.

54. For example, the Registration Statement fails to disclose the terms of the confidentiality agreements the Company entered into with potential bidders and whether the confidentiality agreements contained standstill provisions and/or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

55. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

56. Any reasonable WPX stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly

alter the total mix of information.

57.     Additionally, the Recommendation Statement fails to disclose the social aspects of Company C's indication of interest, including any expectation for future employment of Company management in a combined company or for WPX Board representation on the combined company's board of directors.

58.     The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

59.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of WPX will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

60.     Plaintiff repeats all previous allegations as if set forth in full.

61.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about WPX's and Devon's financial projections, the data and inputs underlying the valuation analyses performed by Citi, Citi's potential conflicts of interest and the background of the Proposed Transaction. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

63. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

64. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

65. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

66. Plaintiff repeats all previous allegations as if set forth in full.

67. The Individual Defendants acted as controlling persons of WPX within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of WPX, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed

with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

70. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

71. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, WPX's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of WPX, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to WPX stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 23, 2020                                    **WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*